UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

LARRY DEAN HATTEN, JR.

Debtor.

BANKRUPTCY CASE NO. 09-31606
CHAPTER 13

**BRIEF OF AMERICA'S SERVICING COMPANY**

The Court has before it pending a Motion for Relief from Stay filed January 3, 2011, by America's Servicing Company ("ASC" or "Movant"), servicing agent for US Bank, National Association, as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, 2006-EQ1. The motion seeks post-confirmation relief from the automatic stay with regard to the Debtor's primary residence known as 449 New Castle Road, Gastonia, NC ("the subject property"), pursuant to §362(d)(1) of the United States Bankruptcy Code, as amended ("the Code"), for payment default.

Specifically, ASC alleges that as of the time of filing the motion, the Debtor was in default for three months of post-confirmation plan payments on the secured claim of ASC in the amount of $90,400.00. The claim is founded upon that note made by the Debtor dated April 24, 2006, for $91,200.00 ("Note"), and which is secured by a deed of trust against the subject property recorded November 30, 2006, in Book 4275, page 1979, of the Gaston County Registry ("Deed of Trust"). At the present, the Debtor is in arrears twenty-two post-confirmation payments.

At hearing before the Court on August 14, 2012, counsel for the Debtor represented that the Debtor takes no issue with the payment history produced by ASC, and therefore does not dispute the default in post-confirmation plan payments. Rather, Debtor is contesting whether ASC is the holder of the Note, and therefore whether ASC has standing to bring the instant motion for stay relief.

1

In anticipated response to the objection of Debtor's counsel, counsel for ASC presented to the Court for inspection all pages of the original Note and allonge evidencing the Note had been endorsed in blank and that ASC has actual possession of the instrument.

Debtor's challenge to Movant's standing should fail for two reasons: 1) A negotiable instrument endorsed in blank becomes a bearer instrument whose right to enforce is transferred and evidenced by possession. ASC is the holder of the Note evidenced by ASC's counsel producing the original Note and allonge for the Court's inspection on August 14, 2012. 2) Debtor is estopped from challenging ASC's standing post-confirmation because the Debtor has admitted ASC is the holder of the Note and real party in interest of the secured claim by providing for and making payments to ASC under Debtor's confirmed Chapter 13 Plan of Reorganization.

A) The Holder of a Note Endorsed in Blank is Determined by Possession

A "holder" is defined under North Carolina law as a person with possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession. N.C. Gen. Stat. § 25-1-201(b)(21). A promissory note is a negotiable instrument that may become payable to a bearer if it is endorsed in blank by a prior payee. N.C. Gen. Stat. §§25-3-104 and 109(c). When a note is endorsed by the holder and does not identify the person to whom the instrument is payable, the indorsement is said to be a "blank indorsement". A note endorsed in blank is payable to the bearer and may be negotiated by transfer of possession alone. N.C. Gen. Stat. §§25-3-201 and 205. A note holder does not need to be the owner of the debt. N.C. Gen. Stat. § 25-3-301.

"After a transfer, the recipient of an instrument obtains whatever rights the transferor had, which in the case of an instrument endorsed in blank amounts to plenary power to enforce the instrument." "Negotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it." Horvath v. Bank of New York, NA, 641 F.3d 617 (4th Cir. 2011).

The Note which the Court inspected on August 14, 2012, and a true copy of which is attached hereto, including the Adjustable Interest Rate Floor Addendum to Note, the Balloon Pyament Addendum to Note, and the Note Endorsements (i.e. allonge), are obviously within the

possession of the Movant. The final page, which contains the endorsement in blank, is signed by Stephanie Raymond, Assistant Vice President of EquiFirst Corporation. N.C. Gen. Stat. §25-3-204(a) defines an "Indorsement" as "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument . . . but regardless of the intent of the signer, **a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is part of the instrument.**" (emphasis added)

The allonge containing the endorsement clearly states at the top "Borrower(s): Larry Dean Hatten, Jr" "Property Address: 449 New Castle Road, Gastonia, NC 28052". Further, the instrument is signed by an Assistant Vice President of EquiFirst Corpoartion, payee of the Note, with the unambiguous words "Without Recourse, Pay to the Order of:"

The signature by an officer of EquiFirst on a page labeled "Note Endorsements" which references both Larry Dean Hatten, Jr., and the subject property, with words of conveyance, unequivocally evidences the intent of Equifirst to negotiate the Note to the bearer of the Note. Having demonstrated possession of the instrument, ASC has clearly met all requirements to be a holder of the Note under the Uniform Commercial Code as adopted in Chapter 25 of the North Carolina General Statutes. The Debtor's argument that the endorsement does not reflect an intent to negotiate the Note, and that even if the endorsement does so reflect, the endorsement is not "affixed" to the Note, willfully ignores the language on the face of the instrument and the presentment to the Court of all original pages of the instrument.

Debtor will no doubt seek to rely upon the 1917 case of <u>Commercial Security Co. v. Main Street Pharmacy</u>, 174 N.C. 655 (1917), and the then statutory requirement that an endorsement be written on the instrument or "on some paper attached thereto." In dicta the 1917 North Carolina Supreme Court declared, in describing "the attached paper", or an allonge, to the note, that "the paper be physically attached or that it should have been when the indorsement was made". However, the 1917 case did not turn on the attachment or non-attachment of the endorsement; rather the 1917 Court found no facts showing there had ever been a valid

3

endorsement and a jury had found fraud and misrepresentation in finding the plaintiff to not be a holder in due course.

Prior caselaw only allowed use of allonges when there was insufficient space on the face or back of an instrument to place a new indorsement. Revisions to Article 3 of the UCC in 1990 now permit use of allonges regardless of the available space for indorsements. See the Official Comment #1 to N.C. Gen. Stat. §25-3-204(a): "An indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement."

Similarly, prior caselaw held an allonge had to be so firmly affixed to the original document as to become a permanent part of the original document. The <u>Commercial Security Co. v. Main Street Pharmacy</u> case is an example of caselaw from that time and thinking. However, contemporary revisions to the UCC regarding allonges changed the requirement from "firmly affixed" to "affixed", and in so, opened the door for allonges to be stapled, paper clipped or otherwise loosely attached to the document to allow for scanning or copying. See <u>Southwestern Resolution Corp. v. Watson</u>, 964 S.W.2d 262 (Tex. 1997). The Texas Supreme Court, in reviewing affixation under Section 3-204 of the UCC, found that an allonge and note which had been detached for photocopying did not raise a jury issue as to affixation, "The fact that the documents had been detached for photocopying does not raise a fact issue for the jury about whether the documents were firmly affixed. If it did, the validity of an allonge would always be a question of the finder of fact, since no allonge can be affixed so firmly that it cannot be detached. One simply cannot infer that two documents were never attached from the fact that they can be, and have been, detached." <u>Southwestern Resolution Corp. v. Watson</u>, 964 S.W.2d at 264.

The Note and allonge in question in the instant case bear multiple indicia of former physical attachment and cross-references which preclude risk of fraud or inconsistent enforcement. One, the allonge indentifies the borrower and the real property securing the Note. Two, the allonge contains the loan number in the lower left corner of the page which is consistent with the loan number printed on each page of the Note, the Adjustable Rate Addendum, and the Balloon Payment Addendum. Three, each page of the Note, Allonge and Addendums is punctured by staple holes in the same location in the top left corner. Four, each page is punctured with two holes in the exact same center top location for attachment in a folder with metal clasps. Five, all pages of the Note, Allonge and Addendums are contained within one

manila folder with the original, recorded Deed of Trust, title insurance policy, and green and blue sheets reflecting chain of custody and shipment of the original documents.

B) <u>Burden on Movant for Stay Relief</u>

A movant for stay relief need only make a colorable claim in order to establish the standing required to bring the motion. A movant need not produce every piece of evidence to prove the right to foreclose under state law. See <u>In re Ebersole</u>, 440 B.R. 690 (Bkrtcy.W.D.Va. 2010). To establish a colorable claim, a movant bears the burden of proving standing, which involves "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." <u>In re Ebersole</u>, 440 B.R. at 694 (citing <u>In re Weisband</u>, 427 B.R. 13 (Bankr.D.ariz. 2010); <u>In re Wilhelm</u>, 407 B.R. 392 (Bankr.D.Idaho 2009); <u>Warth v. Seldin</u>, 422 U.S. 490 (1975)). Constitutional standing concerns the moving party having a personal stake in the action sufficient to establish a "case or controversy" under federal judicial power. Prudential standing requires the moving party assert its own claims, i.e. the movant be the real party in interest. The <u>Weisband</u> court concluded that so long as the movant was the holder of the note, it stood to be injured by the debtor's failure to pay, and therefore had a "case or controversy" and was the real party in interest and therefore met the constitutional and prudential standing requirements. Stated more succinctly, to establish standing a movant for stay relief need only demonstrate that it is the holder of the note.

ASC's holdership of the Note, combined with the foregoing indicia of affixation, as applied to the constitutional and prudential hurdles for standing, requires a finding that Movant is the holder in due course of the Note and the real party in interest. The Debtor's admissions of default in the confirmed plan payments entitles the Movant to stay relief.

C) <u>Estoppel</u>

Debtor voluntarily identified ASC as the first secured creditor on his Schedule D with a claim of $90,400 on his residence, the subject property. The Claim was not identified as disputed (Docket Entry #1). Thereafter, ASC filed a proof of claim for $92,027.53 on July 02, 2009 (Claim #1) together with a copy of the Note and Deed of Trust. Debtor initially objected to the claim stating the Debtor had not been properly credited with all payments made and disputed the arrearages reflected on ASC's proof of claim (Docket Entry #9). Noteworthy, Debtor's

5

objection took no issue with ASC as the proper party in interest and the recognized its secured claim. Thereafter, Debtor withdrew his objection on September 15, 2008 and ASC filed an amended proof of claim on December 12, 2009 (Docket Entry #13).

Debtor then voluntarily proposed his Chapter 13 Plan which proposed direct payments by the Debtor to ASC and left unimpaired the lien of ASC against the Debtor's primary residence (Docket Entry #2). Debtor's Plan confirmed August 25, 2009 (Docket Entry #10). Debtor made all pre-confirmation contractual payments and the post-confirmation payments directly to ASC from September, 2009, through October, 2010. Debtor made 14 post confirmation payments before defaulting on the November, 2010, payment.

Debtor, in pleadings to this Court and in practice, has admitted and demonstrated that ASC, as servicer for the securitized trust of which US Bank, NA, is the trustee, is the holder of his Note. Debtor's petition and schedules, confirmed plan, and withdrawn objection, filed under oath, acknowledge and admit ASC is the real party in interest. No dispute as to standing was alleged until nearly two years after Debtor stopped making payments to ASC on its secured claim and Debtor was faced with the reality of foreclosure. Debtor's current challenge lacks a good faith basis in law and fact, and is intended merely to further delay and facilitate Debtor's continued possession of the subject property in disregard of ASC's security interest. The opportunity for the Debtor to challenge ASC as the holder of the Note was waived when Debtor sought and obtained confirmation of his Plan of Reorganization. That Plan admitted ASC's security interest in the subject property and committed the Debtor to making the contractual monthly payments directly to ASC. Debtor should be bound by the admissions in his pleadings.

D) Cure of Omitted Allonge in Exhibit to Motion for Stay Relief

Debtor has attempted to argue that the omission of a copy of the allonge within the copy of the Note attached as an Exhibit to ASC's Motion for Relief from Stay somehow defeats ASC's possession of the instrument and is fatal to establishing standing. Debtor has, and has had for a substantial period of time in advance of the last hearing, notice and copies of the Note, including all addendums and the allonge bearing the endorsement in blank. Under Rule 9014, a motion in a contested matter can be amended at any time. The omission of the allonge in the scanning of the Note for uploading as an exhibit to ASC's motion was an oversight made in haste. However, no prejudice in the form of lack of notice has befallen the Debtor. Indeed, it

6

was the raising of the issue by Debtor's counsel which, in part, led to continuances of the hearing on ASC's motion and resulted in ASC's counsel ordering and awaiting delivery of the original instrument. ASC is entitled to amend its motion to include the full and complete copy of the Note, including the allonge, in the Court's file and will do so before the end of the week.

This the 28th day of August, 2012.

                                      Hutchens, Senter, Kellam & Pettit, P.A.
                                      Attorneys for America's Servicing Company

                                      By: /s/ William F. Kirk
                                      William F. Kirk
                                      NC Bar No.: 34390
                                      P.O. Box 471662
                                      Charlotte, N.C. 28247
                                      Telephone: (704) 357-6262
                                      Email: William.kirk@hskplaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE:<br><br>LARRY DEAN HATTEN, JR.<br><br>    Debtor. | BANKRUPTCY CASE NO. 09-31606<br>CHAPTER 13 |

## CERTIFICATE OF SERVICE

    I, William F. Kirk, as attorney of record for America's Servicing Company, hereby certify that on the 28th day of August, 2012, I served a copy of the Brief by either electronic notice in accordance with the local rules or by depositing the same, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United states Postal Service, said envelope being addressed as follows:

| | |
|---|---|
| Geoffrey A. Planer<br>PO Box 1596<br>Gastonia, NC 28053 | Attorney for Debtor |
| Warren L. Tadlock<br>Ch. 13 Trustee<br>4600 Park Road, Suite 101<br>Charlotte, NC 28209 | Trustee |

Hutchens, Senter, Kellam & Pettit, P.A.
Attorneys for America's Servicing Company

By: /s/ William F. Kirk
William F. Kirk
NC Bar No.: 34390
P.O. Box 471662
Charlotte, N.C. 28247
Telephone: (704) 357-6262
Email: William.kirk@hskplaw.com

8

# ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

MIN 100200100095414318

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATE I MUST PAY.**

| April 24, 2006 | Gastonia | NC |
|---|---|---|
| (Date) | (City) | (State) |

**449 New Castle Road, Gastonia, NC  28052**
(Property Address)

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ **91,200.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **EquiFirst Corporation** . I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **8.625** %. The interest rate I will pay may change in accordance with Section 4 of the Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the **1st** day of each month beginning on **June 1, 2006**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If on **May 1, 2036**     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
**EquiFirst Corporation , 500 Forest Point Circle , Charlotte, NC 28273**
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ **677.27** .
This amount may change.   With a final payment due of $ **62,435.21** due on **May 1, 2036**.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on **May 1, 2008**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **5.985** percentage points ( **5.985** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.625%** or less than **8.625%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.625%** or less than the initial interest rate provided for in Section 2 of this Note.

**(E) Effective Date of Change**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial payment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

EF815N
Loan Number 954143                    Page 2 of 4                    Initials L.H Jr.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit: and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.00 % of my overdue payment of principal and interest. I will pay this late charge but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

"WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED"

_/s/ Larry Dean Hatten Jr_ (Seal)     _____ (Seal)
Larry Dean Hatten, Jr    -Borrower                                 -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                                      -Borrower

_____ (Seal)     _____ (Seal)
-Borrower                                                      -Borrower

EF815N
Loan Number 954143               Page 4 of 4               Initials L.H Jr.

# ADJUSTABLE INTEREST RATE FLOOR Addendum to Note

This ADJUSTABLE INTEREST RATE FLOOR ADDENDUM is made this **24th** day of **April, 2006**, and amends the Note in the amount of U.S. $ **91,200.00** dated the same date and given by the person(s) who signs below (the "Borrower(s)") to **EquiFirst Corporation** (the "Lender").

In addition to the agreements and provisions made in the Note and the Security Instrument, and not withstanding any provisions to the contrary contained in said Note or the Security Instrument, both the Borrower(s) and the Lender further agree as follows:

## ADJUSTABLE INTEREST RATE FLOOR

THIS LOAN HAS AN INTEREST RATE "FLOOR" WHICH WILL LIMIT THE AMOUNT THE INTEREST RATE CAN DECREASE. REGARDLESS OF ANY CHANGES IN THE INDEX, THE INTEREST RATE DURING THE TERM OF THIS LOAN WILL NEVER BE LESS THAN THE INITIAL INTEREST RATE PROVIDED FOR IN SECTION 2 OF THE NOTE.

_/s/ Larry Dean Hatten Jr_
Larry Dean Hatten, Jr

954143
EF060 (12/99)

## Balloon Payment Addendum to Note

This BALLOON PAYMENT ADDENDUM is made this 24th day of **April, 2006** and amends the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by the person(s) who sign below (the "Borrower(s) to **EquiFirst Corporation** (the "Lender") to secure repayment of a Note in the amount of U.S. $ **91,200.00**.

In addition to the agreements and provisions made in the Note and the Security Instrument, both the Borrower(s) and the Lender further agree as follows:

1) THIS LOAN IS PAYABLE IN FULL AT THE MATURITY DATE. THE "MATURITY DATE" IS May 1, 2036. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

2) **CALCULATION OF MONTHLY PAYMENT AT CHANGE DATE**
**THE SECOND PARAGRAPH OF SECTION 4(C) OF THE NOTE IS HEREBY AMENDED BY DELETING IT IN ITS ENTIRETY AND REPLACING IT WITH THE FOLLOWING:** "THE NOTE HOLDER WILL THEN DETERMINE THE AMOUNT OF THE MONTHLY PAYMENT THAT WOULD BE SUFFICIENT TO REPAY THE UNPAID PRINCIPAL BALANCE THAT I AM EXPECTED TO OWE AT THE CHANGE DATE IN FULL OVER THE REMAINING AMORTIZATION PERIOD OF MY LOAN AT MY NEW INTEREST RATE IN SUBSTANTIALLY EQUAL PAYMENTS. THE RESULT OF THIS CALCULATION WILL BE THE NEW AMOUNT OF MONTHLY PAYMENT. I UNDERSTAND THAT THE AMORTIZATION PERIOD OF MY LOAN IS 40 YEARS FROM THE DATE MY FIRST PAYMENT IS DUE AND THAT I WILL HAVE A FINAL BALLOON PAYMENT DUE ON THE MATURITY DATE."

3) AT LEAST NINETY (90), BUT NOT MORE THAN ONE HUNDRED TWENTY (120) DAYS PRIOR TO THE MATURITY DATE, THE LENDER MUST SEND THE BORROWER(S) A NOTICE WHICH STATES THE MATURITY DATE AND THE AMOUNT OF THE "BALLOON PAYMENT" WHICH WILL BE DUE ON THE MATURITY DATE (ASSUMING ALL SCHEDULED PAYMENTS DUE BETWEEN THE DATE OF THE NOTICE AND THE MATURITY DATE ARE MADE ON TIME).

_/s/ Larry Dean Hatten Jr_
Larry Dean Hatten, Jr

954143
EF034 (03/06)

# Note Endorsements

Borrower(s): Larry Dean Hatten, Jr
Property Address: 449 New Castle Road, Gastonia, NC  28052

---

Without Recourse, Pay to the Order of:

**EquiFirst Corporation**
By: _/s/ Stephanie Raymond_
~~Steve Neu~~

Assistant Vice President          **Stephanie Raymond**