FILED & JUDGMENT ENTERED
Steven T. Salata

Mar 19 2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T Beyer_
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

In re:

**LARRY DEAN HATTEN, JR.**

        Debtor.

CASE NO. 09-31606
CHAPTER 13

## ORDER GRANTING MOTION FOR RELIEF FROM STAY
## FOR 449 NEW CASTLE ROAD, GASTONIA, NC

This matter came before the court for hearing on the Motion for Relief from Stay of America's Servicing Company ("ASC"), servicing agent for US Bank National Association, as Trustee for the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, 2006-EQ1 ("US Bank"), with respect to real property known as 449 New Castle Road, Gastonia, North Carolina and Debtor's Motion to Dismiss Pending Motion From Relief From Stay Pursuant to 11 U.S.C. § 362(d). William F. Kirk appeared on behalf of ASC and Geoffrey A. Planer appeared on behalf of the Debtor. In its Motion for Relief from Stay (the "Motion"), ASC seeks to have the court terminate the automatic stay of § 362(a) to allow ASC to foreclose on its

security interest in the Debtor's property located at 449 New Castle Road. The Debtor moved to dismiss ASC's Motion on the basis that ASC is not a real party in interest and, therefore, lacks standing to bring the Motion. Based on its review of the pleadings and the arguments of counsel and for the reasons stated below, the court grants ASC's Motion and denies the Debtor's Motion to Dismiss Pending Motion [for] Relief from Stay Pursuant to 11 U.S.C. § 362(d) (the "Motion to Dismiss").

### Findings of Fact

1. The Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on June 19, 2009. In Schedule D filed in conjunction with the petition, the Debtor identified "American Service Co." as a secured creditor with a first priority mortgage lien against the Debtor's residence located at 449 New Castle Road, Gastonia, North Carolina. The Debtor did not list the claim of "American Service Co." as disputed. In his Chapter 13 Plan of Reorganization, the Debtor identified "American Svc. Co." as holding a secured claim against the Debtor's residence and proposed direct payments by the Debtor to the secured creditor.

2. On July 2, 2009, US Bank filed a proof of claim with an address in care of America's Servicing Company located in Des Moines, Iowa. The proof of claim asserted a secured claim in the amount of $92,027.53 with pre-petition arrearages in the amount of $1,165.27. Attached to the claim were the Addendum to proof of claim, correspondence from counsel for ASC as servicer for US Bank, a copy of the note from the Debtor payable to EquiFirst Corporation along with the "Adjustable Interest Rate Floor Addendum to Note" and the "Balloon Payment Addendum to Note," and a Deed of Trust executed by the Debtor in favor of EquiFirst Corporation.

3. On August 13, 2009, the Debtor filed an objection to the proof of claim of US Bank contesting the prepetition mortgage arrears in the amount of $1,165.27. Notably, the objection

2

did not assert that ASC did not have standing to file the claim. In its capacity as servicer for US Bank, ASC filed a response to the Debtor's objection to the proof of claim, and on September 15, 2009, the Debtor withdrew his objection. On August 25, 2009, the Honorable George R. Hodges entered an Order confirming Debtor's Chapter 13 Plan, which identified "American Svc. Co." as holding a first priority secured claim against the Debtor's residence.

4. On January 3, 2011, ASC filed the Motion for cause under § 362(d) based on an alleged post-confirmation default in the direct plan payments. The Motion asserted a secured claim of $92,566.69, a fair market value of the real property of $108,900.00, and a tax value of $77,079.00. ASC attached to the Motion a postpetition payment history, a partial copy of the note from the Debtor payable to EquiFirst Corporation along with the same "Adjustable Interest Rate Floor Addendum to Note" and "Balloon Payment Addendum to Note" that was attached to the proof of claim, and the Deed of Trust executed by the Debtor in favor of EquiFirst Corporation. As with the note attached to ASC's proof of claim, there was neither an endorsement on the note nor an allonge affixed thereto.

5. The hearing on ASC's motion was continued numerous times so counsel for ASC could obtain the original promissory note in order for ASC to evidence possession of the bearer instrument. On June 25, 2012, the Debtor moved to dismiss ASC's Motion because the copy of the note and deed of trust attached to ASC's Motion named EquiFirst Corporation as the note payee and deed of trust beneficiary and neither instrument bore evidence of negotiation, assignment, or transfer to either ASC or US Bank.

6. Both motions ultimately came on for hearing on October 9, 2012, at which time counsel for ASC produced for inspection by Debtor's counsel and the court the original promissory note executed on April 24, 2006, by Larry Dean Hatten, Jr., in the amount of

3

$91,200.00 payable to EquiFirst Corporation. Counsel for ASC also produced other unattached sheets of paper, including one that bore an endorsement in blank by Stephanie Raymond, Assistant Vice President of EquiFirst Corporation. Counsel for the Debtor challenged the affixation of such paper to the promissory note and called into question the negotiation of the promissory note by EquiFirst Corporation, the original payee and holder of the note.

7. The court continued the hearing on ASC and the Debtor's respective motions to allow ASC an opportunity to present evidence regarding ASC's possession of the promissory note and affixation of the allonge bearing the endorsement in blank. The court also instructed the parties to contact the court to schedule a continued evidentiary hearing. The matter ultimately was set for continued hearing at the request of the Chapter 13 Trustee on January 15, 2013.[1]

### Conclusions of Law

8. Pursuant to 11 U.S.C. § 362(d), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . ." in certain situations. The Bankruptcy Code does not define the term "party in interest" but, in the context of a motion for relief from stay, courts have found that "[t]he real party in interest with respect to . . . enforcement of the rights of a mortgagee in a bankruptcy is the party entitled to enforce the note and its accompanying mortgage." In re Robinson, No. 07-02146-5-JRL, 2011 WL 5854905, at *2 (Bankr. E.D.N.C. Nov. 22, 2011) (citations omitted).

9. The Debtor argues that ASC is not a "party in interest" with standing to bring a motion for relief from stay as that term is defined in § 362(d) because there was neither an endorsement on the note presented in support of the Motion nor an allonge affixed thereto.[2] ASC, on the other hand, asserts that the court does not reach that issue because the Debtor is bound by

---

[1] Although ASC had raised the issue of estoppel in its brief in support of its Motion, it was at the hearing on January 15, 2013 that it argued that issue for the first time.
[2] The Debtor stipulated that a "servicer" of a note would qualify as a "party in interest" under § 362(d).

4

the confirmation of the plan and the doctrine of *res judicata* and is, therefore, precluded from asserting that ASC does not have standing to pursue the Motion.

10. In a 1996 case, the Fourth Circuit affirmed the principle that the doctrine of *res judicata* applies in the bankruptcy context. First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.), 81 F.3d 1310, 1315 (4th Cir. 1996) (citing Brown v. Felsen, 442 U.S. 127, 132 (1979)). In Varat Enterprises, the Fourth Circuit upheld the decisions of the U.S. District and Bankruptcy Courts for the Western District of North Carolina that found that a debtor's confirmed Chapter 11 plan of reorganization was to be given *res judicata* effect to estop a creditor from objecting to a claim by the debtor's law firm for a lien on the debtor's arbitration award. The appellant in Varat Enterprises suggested that it failed to object to the law firm's claim prior to plan confirmation because it was not aware of the facts or the law surrounding the situation. The Fourth Circuit was not persuaded by that argument and explained that "[a]ctual knowledge of a potential claim . . . is not a requirement for application of *res judicata* principles . . . . 'For purposes of *res judicata*, it is not necessary to ask if the plaintiff knew of his present claim at the time of the former judgment, for it is the existence of the present claim, not party awareness of it, that controls.'" Varat Enterprises, 81 F.3d at 1316 (quoting Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986)). An exception to that general rule exists, however, "in cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action." Harnett, 800 F.2d at 1313.

11. Bankruptcy courts in South Carolina have consistently applied the doctrine of *res judicata* in the context of Chapter 13 cases and confirmed plans of reorganization. This court is persuaded by those cases and their reasoning, particularly Judge Helen E. Burris's decision in In re Jeter, which is factually very similar to this case. This court likewise concludes "that a

5

confirmed Chapter 13 plan, which represents a new contractual agreement between debtors and their creditors, is *res judicata* on the issue of a creditor's rights as a party in interest with standing to seek relief from the stay." In re Jeter, No. 08-07872-HB, 2011 WL 6014173, at *3 (Bankr. D.S.C. Dec. 1, 2011) (citing In re Neals, 459 B.R. 612, 617 (Bankr. D.S.C. 2011); See In re Burretto, C/A No. 05-07146-JW, slip op. at 3–4 (Bankr. D.S.C. July 23, 2008)).

12. The Chapter 13 debtor in the Jeter case challenged a post-confirmation motion for stay relief based on the debtor's default on direct mortgage payments provided for by the plan. The debtor asserted that the movant failed to establish that an allonge bearing a blank endorsement was properly affixed to the note and, therefore, the note was not properly endorsed. Consequently, the debtor argued that the movant could not demonstrate that it was the holder of the note and the real party in interest entitled to pursue the motion for stay relief.

13. As in this case, the Jeters had confirmed a Chapter 13 plan that identified the party that moved for relief from stay (The CIT Group) as the proper party to receive its direct plan payments and withdrew their objection to the proof of claim of the alleged assignee of The CIT Group. Judge Burris found that the debtors "had ample opportunity to assert and pursue any issues regarding the secured creditor's status or the authenticity of any transfer(s) that led to The CIT Group's claimed position at that time and elected not to further pursue any such issues." Jeter, 2011 WL 6014173, at *3. Consequently, Judge Burris held that the Jeters could not claim well after confirmation of the plan that The CIT Group was not the proper party because that position was contrary to the stance taken by the Jeters in their initial schedules, their confirmed plan, and their course of conduct up until the time that the first motion for relief from stay was filed. It was not until after the creditor asserted a default that the Jeters raised or revived any such challenge. Therefore, the court concluded that the debtors were barred by *res judicata* from

6

defending against the motion for relief from stay on the basis of a defect in the transfer of the note and mortgage that existed pre-confirmation.

14. Similarly, in this case the Debtor's ability to challenge the identity of the holder of the debt secured by his residence existed at the time of plan confirmation, and the Debtor should have raised the issue prior to plan confirmation. As in the Jeter case, his failure to do so was inconsistent with the position the Debtor took in his schedules, his confirmed plan, and his other conduct preceding the filing of the Motion. While the court is sympathetic to the Debtor's assertion that he was unaware of the alleged problems with ASC's note until ASC filed the Motion, the Fourth Circuit determined in Varat Enterprises that the relevant inquiry is not whether the Debtor was aware of the alleged problem with ASC's note but whether it existed pre-confirmation, and in this case it did. Moreover, the Debtor did not argue any of the exceptions to the general rule that lack of knowledge will not avoid the application of the principles of *res judicata*. Accordingly, the court finds that the confirmation order in this case is a final judgment with *res judicata* effect and that the Debtor is estopped from asserting that ASC is not a party in interest with standing to bring the Motion. ASC is entitled to the benefits of the *res judicata* effect for purposes of this Motion. However, the court does not intend for this Order to prevent another court from revisiting these issues in any subsequent proceeding.

15. The Debtor argued that the principle of *res judicata* should not apply in this case because the Debtor had identified ASC as "American Service Co." and "American Svc. Co." rather than America's Servicing Company in its schedules and plan. In support of that argument, the Debtor cited In re David A. Simpson, P.C., 711 S.E.2d 165 (N.C. App. 2001), in which the North Carolina Court of Appeals found that the evidence submitted on the issue of holdership of the note and deed of trust by a secured creditor was insufficient to permit the substitute trustee to

7

proceed with foreclosure due to a technical discrepancy between the name of the entity to whom the note in question had been assigned ("Deutsche Bank Trust Company Americas as Trustee") and the party seeking to proceed with the foreclosure ("Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc. Series 2006-QA6"). The <u>Simpson</u> case, however, is factually distinguishable from this case because the typographical errors in the chain of endorsements were errors made by the secured creditor or its predecessors in interest. In this case, the inconsistencies in the name of the movant were the result of typographical errors made by or on behalf of the Debtor in his pleadings. Such typographical errors made by the Debtor should not inure to the benefit of the Debtor or, stated conversely, result in the impairment of the rights of ASC. Such errors are more in the nature of a misnomer that could easily be corrected by the Debtor.

16. Finally, the Debtor admitted the default in the post-confirmation payments as alleged in ASC's Motion and agreed that, but for the challenge to ASC's standing and right to bring the Motion as the real party in interest, the Debtor had no additional defenses to ASC's Motion. Therefore, the court grants ASC's Motion.

It is therefore **ORDERED** that:

1. The Motion for Relief from Stay of America's Servicing Company is granted to allow ASC to exercise its state law rights with respect to 449 New Castle Road, Gastonia, North Carolina;

2. The Debtor's Motion to Dismiss Pending Motion From Relief From Stay Pursuant to 11 U.S.C. § 362(d) is denied;

3. Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is waived and ASC may immediately enforce and implement this Order; and

4. If any sale of the real property is held and excess proceeds are derived, then such proceeds shall be deposited with the Chapter 13 Trustee in this case.

**This Order has been signed electronically. The Judge's signature and the court's Seal appear at the top of the Order.**     **United States Bankruptcy Court**